# Jurisdiction of the Office of Special Counsel, Merit Systems Protection Board, Under 5 U.S.C. §§ 1206(b)(2) and (7)

The Office of Special Counsel, Merit Systems Protection Board, has no authority under 5 U.S.C. §§ 1206(b)(2) and (7), to require another agency to submit a report concerning allegations of misconduct not made by a federal employee or an applicant for federal employment.

March 13, 1981

## MEMORANDUM OPINION FOR THE GENERAL COUNSEL, ꞌNUCLEAR REGULATORY COMMISSION

This responds to your request for an opinion concerning the authority of the Office of Special Counsel (OSC), Merit Systems Protection Board, under 5 U.S.C. §§ 1206(b)(2) and (7). In particular, you ask whether the Office of Special Counsel is empowered under those provisions to require the Nuclear Regulatory Commission (NRC) to submit a report to it on a joint complaint by a private organization and a private individual alleging NRC mismanagement and gross waste at a nuclear power facility in Ohio.

It will be helpful to mention, as background, certain statutory responsibilities of OSC before we turn to 5 U.S.C. §§ 1206(b)(2) and (7). Section 1206(a)(1) authorizes it to receive and investigate allegations of the occurrence of any of the prohibited personnel practices listed in 5 U.S.C. § 2302(b), one of which is a superior's taking or failing to take a personnel action against a subordinate employee or an applicant for employment as a reprisal for "whistleblowing." *See* 5 U.S.C. § 2302(b)(8).

Section 1206(b)(1) places a restraint on OSC for the benefit of whistleblowers. It provides as follows in pertinent part:

(b)(1) In any case involving—

\* \* \* \* \*

(B) a disclosure by an employee or applicant for employment to the Special Counsel of the Merit Systems Protection Board . . . of information which the employee or applicant reasonably believes evidences—

(i) a violation of any law, rule, or regulation; or

77

(ii) mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety;

the identity of the employee or applicant may not be disclosed without the consent of the employee or applicant during [certain investigations] unless the Special Counsel determines that the disclosure . . . is necessary . . .

Section 1206(b)(2) and the pertinent part of § 1206(b)(7) read as follows:

(2) Whenever the Special Counsel receives information of the type described in paragraph (1) of this subsection, the Special Counsel shall promptly transmit such information to the appropriate agency head.

(7) Whenever the Special Counsel transmits any information to the head of the agency under paragraph (2) of this subsection . . . the head of the agency shall, within a reasonable time after the information was transmitted, inform the Special Counsel, in writing, of what action has been or is to be taken and when such action will be completed . . . .

It appears that the occurrence which gave rise to your request for an opinion was OSC's transmittal to NRC "pursuant to the provisions of 5 U.S.C. § 1206(b)(2)" of a letter stating that a private citizen and a private organization had charged certain NRC employees with misconduct of a kind specified in § 1206(b)(1)(B)(ii) at a certain nuclear power facility. The letter requested NRC to submit a report "pursuant to 5 U.S.C. § 1206(b)(7)." OSC made the request in accordance with its understanding that the words of § 1206(b)(2), "information of the *type* described in paragraph (1) of this subsection" (emphasis added), require only its antecedent receipt of evidence of an offense listed in § 1206(b)(1) and do not require also that the evidence come from a federal source. In your letter to this Office, you take the position that OSC does not have authority to obtain the report from NRC because the antecedent allegations of misconduct were not made by a federal employee or applicant for federal employment. For the following reasons, we concur in your position.

An examination of the legislative history of the Civil Service Reform Act of 1978, which created OSC, has revealed nothing to suggest that Congress had in mind the construction of § 1206(b)(2) that OSC follows. To the contrary, Senator Patrick J. Leahy, the sponsor of an amendment on the floor of the Senate that, among other things, introduced the provisions of what are now §§ 1206(b)(2) and (7) into the Act, placed a contrary intent on record. Upon introducing the amendment, which the Senate approved without objection, he submitted a

78

supporting statement signed by him and 16 colleagues that contained the following:

> When the Senate considers S. 2640, the Civil Service Reform Act, we intend to offer an amendment to strengthen the whistleblower protections. This proposal will assure that the charges raised by whistleblowers— those *federal employees* who disclose illegality, waste, abuse, or dangers to public health or safety—are fully investigated. We ask you to join with us in establishing a mechanism for the handling of whistleblower complaints which will result in the systematic weeding out of wronged [sic] from the federal service.
>
>     *      *      *      *      *
>
> Although *employees* are free, under the committee's bill, to publicly disclose impropriety, no dissent channel is established so that employees can seek internal resolution of allegations. Our amendment seeks to assure that *employees* have a safe place to go outside their agency where their allegations will be taken seriously. We hope to encourage *employees* to give the government the first crack at cleaning its own house before igniting the glare of publicity to force correction. We do not want to limit the *employees'* rights to speak out when they see wrongdoing; we do want to assure them that the government has a commitment to eliminating the wrongdoing.

124 Cong. Rec. 27,570–71 (1978) (emphasis added).

It is fair to say that these passages, which were not challenged at the time or later, manifested a clear understanding on the part of Congress that it was legislating only in relation to employees of the government. The passages therefore effectively dispose of OSC's claim of jurisdiction under §§ 1206(b)(2) and (7) in its letter to your agency.

A close reading of § 1206(b)(2) also militates against OSC's asserted authority. That paragraph must by its terms be read together with the language of § 1206(b)(1)(B) that describes a type of "information." The language is as follows: "information which the *employee or applicant* resonably believes evidences [a specified offense]." (emphasis added) Thus there is actually no give in § 1206(b)(2) to accommodate the interpretation that it permits OSC to transmit information to an agency head that has not been assessed by a federal whistleblower.

In sum, we are of the opinion that NRC is not required to furnish OSC the report it seeks.

LARRY L. SIMMS
*Acting Assistant Attorney General*
*Office of Legal Counsel*
